IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14–cv–00916–RBJ–KMT

DAVID JENNER,

Plaintiff(s),

v.

CAPTAIN DON BRIGHTWELL, individual capacity,
ASSISTANT ATT. GENERAL JACQUELYNN N. RICH FREDERICKS, individual capacity,
JOHN/JANE DOE #1 (Limon Correctional Facility Staff), individual capacity,
JOHN/JANE DOE #2 (Limon Correctional Facility Staff), individual capacity, and
JOHN/JANE DOE #3 (C.D.O.C Offender Services), individual capacity,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on Defendants Captain Don Brightwell and Assistant Attorney General Jacquelynn N. Rich Fredericks' (hereinafter "Defendants") "Motion to Dismiss Amended Prisoner Complaint [#9] pursuant to Fed. R. Civ. P. 12(b)(6)." (Doc. No. 17, filed Aug. 5, 2014.) For the following reason, the court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED, but that Plaintiff be granted leave to amend his Amended Complaint in a manner consistent with this Recommendation.

## FACTUAL BACKGROUND

The following factual background is taken from Plaintiff's Amended Prisoner Complaint. (Doc. No. 9 [Am. Compl.].) Plaintiff is an inmate with in the Colorado Department of

Corrections (CDOC) and is currently housed at Fremont Correctional Facility (FCF). (Am. Compl. at 2.)

In June 2011, Plaintiff filed a civil action in this court captioned as *Jenner v. Sokol, et al.*,[1] Case No. 11-cv-01497-RBJ-KMT (hereinafter the "Underlying Action"). (*Id.*at 5.) In that case, Plaintiff asserted claims for violations of his rights under the First Amendment and the Religious Land Use and Institutionalized Person's Act (RLUIPA), as well as a retaliation claim. (*Id.*; *see also* Compl., Case No. 11-cv-01497-RBJ-KMT.) Although the retaliation claim was dismissed, Plaintiff's First Amendment and RLUIPA claims survived summary judgment and were scheduled for a bench trial beginning on March 18, 2013. (Am. Compl. at 5; *see also* Orders, Doc. No. 89 & 103, Case No. 11-cv-1497-KMT-RBJ.)

Just over a month prior to trial in the Underlying Action, Plaintiff was reclassified pursuant to a "routine classification procedure." (Am. Compl. at 5.) At his reclassification hearing, it was recommended that Plaintiff be retained at his then-current facility, Limon Correctional Facility (LCF). (*Id.*) Plaintiff maintains that his signature on the relevant reclassification paperwork indicated that he agreed with the recommendation to remain at LCF. (*Id.*)

The reclassification paperwork was then forwarded to Defendant Brightwell, who reviews and approves all classifications. (*Id.*) Plaintiff alleges that Defendant Brightwell contacted CDOC Offender Services or, alternatively, was contacted by Offender Services in

---

[1] The caption in that case was subsequently changed to *Jenner v. Brightwell, et al.*, due to the February 2013 substitution of Defendant Brightwell for previous defendant Kenneth Sokol. (*See* Doc. Nos. 128 & 129.) However, to avoid any confusion with the present action, the court will refer to this case as *Jenner v. Sokol, et al.*, or the Underlying Action.

order to initiate a transfer of Plaintiff from LCF to FCF. (*Id.*) Plaintiff alleges that the purpose of this transfer was to permit the defendants in the Underlying Action to move to dismiss Plaintiff's claims as moot. (*Id.*) Plaintiff maintains that Defendant Rich-Fredericks, the Assistant Attorney General representing the CDOC defendants in the Underlying Action, was also involved in the effort to get him transferred away from LCF. (*Id.*)

Plaintiff was initially scheduled to be transferred to FCF on February 25, 2013; however, his transfer was delayed until March 4, 2013 to allow him to participate in the Final Pretrial Conference in the Underlying Action. (*See id.*) Plaintiff alleges that, during his transfer, his personal and legal property, including all of his pleadings in the Underlying Action, were destroyed by Defendants John/Jane Doe ## 1, 2, and 3. (*Id.* at 5, 6.)

On March 4, 2013, the same day Plaintiff was transferred to FCF, Defendant Rich Fredericks filed a motion to dismiss the Underlying Action as moot. (Doc. No. 136, Case No. 11-cv-1497-RBJ-KMT.) On March 6, 2013, District Judge R. Brooke Jackson denied the motion to dismiss. (Order, Doc. No. 140, Case. No. 11-cv-1497-RBJ-KMT.) Specifically, Judge Jackson found as follows:

> The timing of this reassignment, on the eve of trial, is concerning, as it is the concept that the plaintiff would have to essentially start over after waiting nearly two years for his trial. The defendant knows what the policies and practices are at the new facility and should come prepared to discuss them with specific reference to the plaintiff's remaining complaints (concerning his ability to meet with the Jewish faith group at a time other than 7:00 p.m. and the opportunity to light an actual candle before sunset, and how those things interact with the time of lining up for counts and the dinner service). Assuming that the defendant continues to believe that it cannot accommodate plaintiff's requests, then we will resolve the issues at trial beginning March 18, 2013.

(*Id.*)

A four-day bench trial was held in the Underlying Action on March 18-20 and April 19, 2013.[2] (*See* Doc. Nos. 144, 146-147 & 153, Case. No. 11-cv-1497.) On the last day of trial, as part of his findings, Judge Jackson discussed Plaintiffs transfer to FCF and its implications on the Underlying Action:

> And I personally considered it to be most unfortunate that just on the eve of trial [Plaintiff] was whisked away from Limon and placed at Fremont. There may have been a legitimate penological reason for that. It's somewhat to his benefit in the sense that it's a lower level of offender facility and therefore at least in theory more open and offering more opportunities. But it changed the whole dynamic of this case because he doesn't really have any experience to speak of in Fremont and if it weren't for the fact of the tragedy involving Mr. Clements, he wouldn't have virtually any. He's just had a couple, three weeks, a month, something like that, six weeks at most [at FCF].
>
> And so so much of this evidence was interesting and made me understand why Mr. Jenner feels the way he does, but you can almost say it doesn't really relate too well to Fremont except for the fact that I have no reason to believe that the policy which is AR 800-01, which is CDOC-wide, wouldn't apply equally in Fremont as it does in Limon. I absolutely do not agree that that move mooted this case in any way, shape, or form, because the entire CDOC is required to abide by that administrative regulation in good faith.

(Partial Trial Tr. 12:12-13:7.)

Ultimately, however, Judge Jackson found in favor of the defendants in the Underlying Action and against Plaintiff on Plaintiff's substantive claims. (Doc. No. 153, Case. No. 11-cv-1497.) Accordingly, judgment was entered in favor of the defendants and against Plaintiff on April 24, 2013. (Doc. No. 154, Case. No. 11-cv-1497.)

---

[2] The final day of trial was postponed from March 21 to April 19, 2013, due to the death of CDOC Executive Director Tom Clements on March 19, 2013. (*See* Order, Doc. No. 148, filed Mar. 26, 2013; Doc. No. 155, Partial Trial Tr., 2:8-11, Case. No. 11-cv-1497.)

## PROCEDURAL HISTORY

Based on the facts described above, Plaintiff asserts a single claim pursuant to 42 U.S.C. § 1983, for retaliation in violation of the First Amendment. (*See* Am. Compl. at 5-6.) In their Motion to Dismiss, Defendants argue that Plaintiff's Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's retaliation claim fails to state a claim upon which relief can be granted. Plaintiff's Response to Defendants' Motion to Dismiss was filed on October 3, 2014 (Doc. No. 25) and Defendants' Reply was filed on October 17, 2014 (Doc. No. 26). Accordingly, this matter is ripe for the court's review and recommendation.

## LEGAL STANDARDS

### *A.* Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see*

*also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

***B. Failure to State a Claim upon which Relief can be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 680. Second, the Court considers the remaining factual allegations "to

determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted).

**ANALYSIS**

Prison officials may not retaliate against a prisoner for exercising his or her constitutional rights. *Smith v. Maschner,* 899 F. 2d 940, 947 (10th Cir. 1990); *see also Poole v. Cnty. of Otero,* 271 F.3d 955, 960 (10th Cir. 2001) *overruled on other grounds by Hartman v. Moore,* 547 U.S. 250 (2006) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). As is relevant here, access to the court is a fundamental right protected by the United States Constitution. *Nordgren v. Miliken,* 762 F.2d 851, 853 (10th Cir. 1985). To state a § 1983 retaliation claim, a plaintiff must allege that (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of

ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to plaintiff's exercise of constitutionally protected conduct. *Allen v. Avance,* 491 F. App'x 1, 6 (10th Cir. 2012) (citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)).

Defendants argue that Plaintiff fails to state § 1983 retaliation claim because (1) they are entitled to absolute prosecutorial immunity for any alleged retaliatory action taken in the Underlying Action; (2) Defendants were not involved in the alleged destruction of Plaintiff's personal property; and (3) that being transfer from LCF to FCF would not chill a person of ordinary firmness because FCF is a less secure facility. The court addresses these arguments in turn below.

***A. Absolute Immunity***

Prosecutors enjoy absolute immunity from civil suits for damages asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). More generally, absolute immunity protects various participants in the judicial process and the Supreme Court has stated that such immunity is "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512 (1978).

Absolute immunity, however, is not limited to the criminal context. For example, courts have stretched the doctrine of absolute immunity beyond the criminal process to cover conduct in civil proceedings where the government attorney is operating in an enforcement role and advocating for the state "in initiating and prosecuting judicial proceedings." *Cooper v. Parrish,* 203 F.3d 937, 947 (6th Cir. 2000); *see also, e.g., Fry v. Melaragno,* 939 F.2d 832 (9th Cir. 1991)

(absolute prosecutorial immunity applied to federal government attorney who brought a civil suit for tax deficiencies); *Juide v. City of Ann Arbor,* 839 F. Supp. 497, 500-504 (E.D. Mich. 1993) (city officials entitled to absolute prosecutorial immunity for actions taken in civil forfeiture proceeding). In addition, as is relevant here, several Circuits, including the Tenth Circuit, have recognized that absolute immunity applies to protect government counsel for their actions in defending civil suits. *Van Deelen v. City of Kan. City, Mo.*, No. Civ.A. 05-2028, 2005 WL 3050151, at *8 (D. Kan. Nov. 14, 2005) (collecting cases, including *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372-73 (10th Cir. 1991)). As the Second Circuit noted in *Barrett v. United States,* 798 F.2d 565, 572 (2d Cir 1986):

> Although government defense counsel, not having selected the other party as the target of the litigation, is in a more passive position than a prosecutor or plaintiff's representative, he nevertheless functions in an adversarial arena . . . and since he is charged with a public trust he should not be inhibited in the faithful performance of his duties by the threat of harassing lawsuits against him. His function as a government advocate therefore entitles him to absolute immunity . . . .

(citing *Butz,* 438 U.S. at 512); *see also Robinson,* 940 F.2d at 1372 n.4 (discussing *Barrett* in acknowledging that "[a]bsolute immunity also has been extended to government lawyers involved in civil proceedings"). Thus, absolute immunity protects government attorneys from a § 1983 action for damages based on actions taken in their official capacity in defending against a prior § 1983 suit. *See, e.g., Murphy v. Morris,* 849 F.2d 1101, 1104-1105 (8th Cir. 1988) (finding that assistant attorney general was immune from a § 1983 suit for the introduction of evidence in a prior § 1983 suit).

Ultimately, however, in determining whether absolute immunity applies, the court must look to the function performed, and not the person who performed it. *Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1314 (10th Cir. 1999) (citing *Buckley v. Fitzsimmons,* 509

U.S. 259, 269 (1993)). "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990).

Here, Defendant Rich Fredericks' filing of a motion to dismiss Plaintiff's claims in the Underlying Action, based on Plaintiff's transfer to FCF, lies directly at the heart of the judicial process. Defendant Rich Fredericks was functioning squarely within her capacity as an advocate for state government defendants in a judicial proceeding. Moreover, the court finds that the policy justifications for applying absolute immunity are satisfied under these circumstances. More specifically, affording absolute immunity for actions taken in a prior civil suit is necessary to protect government defense attorneys from being subjected to retaliation claims any time they take an adverse action in a suit filed by a prisoner or other civil litigant who, by definition, are necessarily exercising their constitutional right of access to the court through that civil suit. Accordingly, the court finds that Defendant Rich Fredericks is entitled to absolute immunity from Plaintiff's retaliation claim to the extent it is premised on her filing a motion to dismiss Plaintiff's claims in the Underlying Action.

***B. Personal Participation in Destruction of Property***

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 768 (10th Cir. 2013) (citing *Foote v. Speigel,* 118 F.3d 1416, 1423 (10th Cir. 1997)). More specifically, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676.

Here, Plaintiff's allegations fail to establish that Defendants Brightwell and Rich Fredericks were involved in the destruction of his personal property and legal materials. (*See* Am. Compl. at 4, 6.) Instead, Plaintiff alleges that the John/Jane Doe defendants destroyed his personal property and legal materials when arranging for Plaintiff's transfer from LCF to FCF. (*Id.*)

Plaintiff admits this much in his Response. (*Id.* at 7.) Nevertheless, he argues that Defendant Rich Fredericks and Brightwell may be held liable for these actions because they "set into action a series of events that caused a constitutional violation against Mr. Jenner, i.e., retaliation for accessing the courts." (*Id.*)

A plaintiff may establish a cause connection between a defendant's actions and an alleged constitutional deprivation by "showing the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of h[is] constitutional rights." *Schneider,* 717 F.3d at 768. However, here the court finds that causal relationship between Defendants alleged involvement in the decision to transfer Plaintiff from LCF to FCF and the alleged destruction of Plaintiff's property during that move is too tenuous to consider the loss of property a result of the transfer. *Morrison v. Lefevre,* 592 F. Supp. 1052, 1079-80 (S.D.N.Y. 1984). Stated differently, because there are no factual allegations directly tying Defendants to the execution of Plaintiff's transfer, including the packing of his property, the court finds that Plaintiff has failed to allege facts sufficient to establish that Defendants knew or reasonably should have known that Plaintiff's property would be destroyed during his transfer.

### *C. Whether Plaintiff's Transfer to FCF Constituted an Injury Sufficient to Chill a Person of Ordinary Firmness from Continuing to Engage in that Activity*

The standard for determining the chilling effect on protected activity "is objective, rather than subjective." *Eaton v. Meneley*, 379 F.3d 949, 955 (10th Cir. 2004). Thus, the relevant inquiry is not whether the plaintiff was actually deterred from exercising his constitutional rights, but whether a person of ordinary firmness in the plaintiff's position would have been so deterred. *See id.* A "trivial or *de minimis* injury will not support a" § 1983 retaliation claim. *Id.*

As a threshold matter, although the court has found the filing of a motion to dismiss in the Underlying Action is protected by absolute immunity, the court must also address whether Plaintiff's transfer to FCF caused Plaintiff to suffer an injury with respect to the outcome of Underlying Action that would deter a person of ordinary firmness from exercising his or her right of access to the courts.

The court finds that Plaintiff's transfer did not cause him to suffer any more than a *de minimis* injury in the Underlying Action. Although Defendant Rich Frederick filed a motion to dismiss Plaintiff's claims in the Underlying Action based on Plaintiff's transfer, that motion was denied in short order by Judge Jackson, and Plaintiff's claims proceeded to trial. Further, although Judge Jackson considered Plaintiff's transfer to FCF to be "most unfortunate" and found that it "changed the whole dynamic of the case" (Partial Trial Tr. 12:12, 18), he nevertheless found that Plaintiff's transfer did not "in any way, shape, or form" moot the Underlying Action. (Partial Trial Tr. 12:12-18, 13:5-6.) Thus, Judge Jackson ultimately addressed Plaintiff's First Amendment and RLUIPA claims on their merits. Under these circumstances, the court finds that, at most, Plaintiff's transfer caused a *de minimis* injury in the Underlying Action.

The only remaining question then is whether Plaintiff's transfer from LCF to FCF itself satisfies the second element of a § 1983 retaliation claim. As a general matter, a prisoner does not have a constitutional right to remain at a particular facility. *Frazier v. Dubois,* 922 F.2d 560, 561-62 (10th Cir. 1990) (citation omitted). Nevertheless, as a general matter, prison officials cannot transfer an inmate to another facility in retaliation for the exercise of his or her constitutional rights. *Id.* Ultimately, the court must look to the circumstances surrounding the inmate's transfer to determine whether it constitutes an injury that would chill a person of ordinary firmness from exercising their protected rights in the future. *Gandy v. Barber*, No. 12-cv-03331-MSK-MJW, 2014 WL 6853952 (D. Colo. Dec. 5, 2014).

In *Gandy*, Chief Judge Marcia S. Krieger held that a lateral transfer to another prison facility that has no impact on a prisoner's rights or privileges constitutes a *de minimis* injury unless the plaintiff can show that the transfer had other disruptive consequences. *Id.* at *4. There, a CDOC inmate brought a § 1983 retaliation claim after he was laterally transferred from the Arkansas Valley Correctional Facility (AVCF) to another prison allegedly for filing a grievance against a staff member. *Id.* at *1.

Judge Krieger concluded that the circumstances surrounding the plaintiff's transfer failed to establish an injury that would dissuade a person of reasonable firmness from filing grievances in the future. *Id.* at *4. Although the lateral transfer meant that the plaintiff retained substantially the same rights and privileges at the new facility, Judge Krieger acknowledged that "[e]ven if an inmate's privileges remain constant between facilities, a transfer can be disruptive in other ways—*e.g.* loss or delay in transfer of personal property, an interruption [to] the ability to participate in or complete rehabilitative programs and treatments." *Id.* However, the only

disruption suffered by the plaintiff in *Gandy* was that his transfer resulted in the termination of his participation in the AVCF apprentice program and he had not shown that he was unable to resume a similar program at the new facility, or that he otherwise suffered some skill limitation or educational setback. *Id.* Judge Krieger therefore found that the plaintiff's injury as a result of his transfer was *de minimis* and would not have dissuaded a person of reasonable firmness from filing future grievances. *Id.*

Here, unlike in *Gandy*, Plaintiff's transfer was actually a step-down transfer—while LCF is a Level IV security facility, FCF is only a Level III security facility. Colo. Rev. Stat. § 17-1-104.3. Moreover, Plaintiff does not allege that his transfer had any impact on his rights or privileges within the CDOC, or that his transfer otherwise caused any disruption other than destruction of his personal legal property by the Doe Defendants discussed above. Accordingly, the court finds that Plaintiff has failed to allege that he suffered any more than a *de minimis* injury as a result of his transfer, which is insufficient to state a § 1983 claim for retaliation.

Notwithstanding the court's conclusion that Plaintiff's Amended Complaint fails to state a claim for relief against Defendants, "[d]ismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 806 (10th Cir. 1999); *see also Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1999) (If "it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend"). In his Response, Plaintiff asserts that, at FCF, he "has been continuously denied privileges of a medium custody inmate, such as working in industries given the length of his

sentence and hence would have been better served to have remained at L.C.F., where he could have worked in the industries." (Resp. at 5.) The court is unable to consider this assertion in addressing the sufficiency of Plaintiff's Amended Complaint under Rule 12(b)(6). *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008) (Under Rule 12(b)(6), the court must "look to the specific factual allegations in the complaint to determine whether they plausibly support a legal claim for relief"); *Issa v. Comp USA*, 354 F.3d 1174, 1179 (a party cannot supplement his complaint through new allegations in a responsive brief). However, if this or other factual allegations relating to the consequences of Plaintiff's transfer were included in an amended pleading, Plaintiff may be able to state a claim for retaliation under § 1983. Accordingly, the court will recommend that Plaintiff be granted an opportunity to amend his complaint to cure this defect.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' "Motion to Dismiss Amended Prisoner Complaint [#9] pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 17) be GRANTED and that Plaintiff's Amended Complaint be dismissed, but that Plaintiff be granted leave to amend his Amended Complaint in a manner consistent with this Recommendation.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 3rd day of February, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge