IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14–cv–00916–RBJ–KMT

DAVID JENNER,

      Plaintiff(s),

v.

CAPTAIN DON BRIGHTWELL, individual capacity,
ASSISTANT ATT. GENERAL JACQUELYNN N. RICH FREDERICKS, individual capacity,
JOHN/JANE DOE #1 (Limon Correctional Facility Staff), individual capacity,
JOHN/JANE DOE #2 (Limon Correctional Facility Staff), individual capacity, and
JOHN/JANE DOE #3 (C.D.O.C Offender Services), individual capacity,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This matter is before the court on Defendants Captain Don Brightwell and Assistant

Attorney General Jacquelynn N. Rich Fredericks' (hereinafter "Defendants") "Motion to Dismiss

Second Amended Prisoner Complaint [#34] pursuant to Fed. R. Civ. P. 12(b)(6)."  (Doc. No. 35

["Mot."], filed April 23, 2015.)  Plaintiff has filed a response (Doc. No. 41 ["Resp."], filed June

18, 2015), to which Defendants have replied.  (Doc. No. 42 ["Reply"], filed July 2, 2015.)

### FACTUAL BACKGROUND

      Plaintiff is an inmate with in the Colorado Department of Corrections ("CDOC") and is

currently housed at Fremont Correctional Facility ("FCF").  (Doc. No. 34 ["Am. Compl."] at 2.)

In June 2011, Plaintiff filed a civil action in this court captioned as *Jenner v. Sokol, et al.,* Case

No. 11-cv-001497-RBJ-KMT (the "Underlying Action").[1]  (*Id.* at 4.)  In that case, Plaintiff asserted claims for violations of his rights under the First Amendment and the Religious Land Use and Institutionalized Person's Act ("RLUIPA"), as well as a retaliation claim.  (*Id.*; *see also* Compl., Case No. 11-cv-001497-RBJ-KMT.)  Although the retaliation claim was dismissed, Plaintiff's First Amendment and RLUIPA claims survived summary judgment and were scheduled for a bench trial beginning on March 18, 2013.  (Am. Compl. at 4-5; *see also* Orders, Doc. No. 89 & 103, Case No. 11-cv-01497-KMT-RBJ.)

Just over a month prior to trial in the Underlying Action*,* Plaintiff was reclassified pursuant to a "routine classification procedure."  (Am. Compl. at 5.)  At his reclassification hearing, it was recommended that Plaintiff be retained at his then-current facility, Limon Correctional Facility ("LCF").  (*Id.*)  Plaintiff maintains that his signature on the relevant reclassification paperwork indicated that he agreed with the recommendation to remain at LCF. (*Id.*)

The reclassification paperwork was then forwarded to Defendant Brightwell, who reviews and approves all classifications.  (*Id.*)  Plaintiff alleges that Defendant Brightwell contacted CDOC Offender Services or, alternatively, was contacted by Offender Services in order to initiate a transfer of Plaintiff from LCF to FCF.  (*Id.*)  Plaintiff alleges that the purpose of this transfer was to permit the defendants in the Underlying Action to move to dismiss Plaintiff's claims as moot.  (*Id.* at 4.)  Plaintiff maintains that Defendant Rich-Fredericks, the

---

[1] The caption in that case was subsequently changed to *Jenner v. Brightwell, et al.,* due to the February 2013 substitution of Defendant Brightwell for previous Defendant Kenneth Sokol. (*See* Doc. Nos. 128 & 129.)  However, to avoid any confusion with the present action, the court will refer to this case as *Jenner v. Sokol, et al.,* or the Underlying Action.

Assistant Attorney General representing the CDOC defendants in the Underlying Action, was also involved in the effort to get him transferred away from LCF.  (*Id.* at 4, 5)

Plaintiff was initially scheduled to be transferred to FCF on February 24, 2013; however, his transfer was delayed until March 4, 2013 to allow him to participate in the Final Pretrial Conference, also scheduled for February 24, 2013, in the Underlying Action.  (*Id.* at 5.)  Plaintiff alleges that, during his transfer, his personal and legal property, including all of his pleadings in the Underlying Action, were destroyed.  (*Id.* at 4, 5, 6, 7-8.)

On March 4, 2013, the same day Plaintiff was transferred to FCF, Defendant Rich Fredericks filed a motion to dismiss the Underlying Action as moot.  (Doc. No. 136, Case No. 11-cv-01497-RBJ-KMT.)  On March 6, 2013, District Judge R. Brooke Jackson denied the motion to dismiss.  (Order, Doc. No. 140, Case. No. 11-cv-01497-RBJ-KMT.)  Specifically, Judge Jackson found as follows:

> The timing of this reassignment, on the eve of trial, is concerning, as it is the concept that the plaintiff would have to essentially start over after waiting nearly two years for his trial.  The defendant knows what the policies and practices are at the new facility and should come prepared to discuss them with specific reference to the plaintiff's remaining complaints (concerning his ability to meet with the Jewish faith group at a time other than 7:00 p.m. and the opportunity to light an actual candle before sunset, and how those things interact with the time of lining up for counts and the dinner service).  Assuming that the defendant continues to believe that it cannot accommodate plaintiff's requests, then we will resolve the issues at trial beginning March 18, 2013.

(*Id.*)

A four-day bench trial was held in the Underlying Action on March 18-20 and April 19, 2013.[2]  (*See* Doc. Nos. 144, 146-147 & 153, Case. No. 11-cv-01497.)  On the last day of trial, as part of his findings, Judge Jackson discussed Plaintiffs transfer to FCF and its implications on the Underlying Action:

> And I personally considered it to be most unfortunate that just on the eve of trial [Plaintiff] was whisked away from Limon and placed at Fremont.  There may have been a legitimate penological reason for that.  It's somewhat to his benefit in the sense that it's a lower level of offender facility and therefore at least in theory more open and offering more opportunities.  But it changed the whole dynamic of this case because he doesn't really have any experience to speak of in Fremont and if it weren't for the fact of the tragedy involving Mr. Clements, he wouldn't have virtually any.  He's just had a couple, three weeks, a month, something like that, six weeks at most [at FCF].
>
> And so so much of this evidence was interesting and made me understand why Mr. Jenner feels the way he does, but you can almost say it doesn't really relate too well to Fremont except for the fact that I have no reason to believe that the policy which is AR 800-01, which is CDOC-wide, wouldn't apply equally in Fremont as it does in Limon.  I absolutely do not agree that that move mooted this case in any way, shape, or form, because the entire CDOC is required to abide by that administrative regulation in good faith.

(Partial Trial Tr. 12:12-13:7.)

Ultimately, however, Judge Jackson found in favor of the defendants in the Underlying Action and against Plaintiff on Plaintiff's substantive claims.  (Doc. No. 153, Case. No. 11-cv-01497.)  Accordingly, judgment was entered in favor of the defendants and against Plaintiff on April 24, 2013.  (Doc. No. 154, Case. No. 11-cv-01497.)

---

[2] The final day of trial was postponed from March 21 to April 19, 2013, due to the death of CDOC Executive Director Tom Clements on March 19, 2013.  (*See* Order, Doc. No. 148, filed Mar. 26, 2013; Doc. No. 155, Partial Trial Tr., 2:8-11, Case. No. 11-cv-001497.)

## PROCEDURAL HISTORY

Based on the facts described above, Plaintiff asserts a single claim pursuant to 42 U.S.C. § 1983, for retaliation in violation of the First Amendment.   (Am. Compl. at 5-6.)  Previously, this court granted a Motion to Dismiss filed on behalf of Defendants in this matter based on Plaintiff's failure to allege sufficient facts to support his retaliation claim.  (Doc. No. 17; Doc. No. 27; Doc. No. 29.)  Specifically, the court found that Plaintiff had not alleged "that his transfer had any impact on his rights or privileges within the CDOC, or that his transfer otherwise caused any disruption other than destruction of his personal legal property . . . . Accordingly, the court finds that Plaintiff has failed to allege that he suffered any more than a *de minimis* injury as a result of his transfer, which is insufficient to state a § 1983 claim for retaliation." (Doc. No. 27 at 14.)  This court also recommended that Plaintiff have the opportunity to amend his pleading in order to cure said defect.  (*Id.* at 15.)  The district judge adopted this court's recommendation in full.  (Doc. No. 29.)

Plaintiff filed a Second Amended Complaint on April 9, 2015, in which he clarified and expanded his allegations, including with regard to the effects of his transfer to FCF.  (Am. Compl. at 6-7.)  Defendants have filed another Motion to Dismiss arguing that Plaintiff's Second Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) arguing that Plaintiff has again failed to state a claim upon which relief can be granted.

## LEGAL STANDARDS

### *Failure to State a Claim upon which Relief can be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 680. Second, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663.

6

Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted).

## ANALYSIS

Prison officials may not retaliate against a prisoner for exercising his or her constitutional rights. *Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir. 1990); *see also Poole v. Cnty. of Otero,* 271 F.3d 955, 960 (10th Cir. 2001) *overruled on other grounds by Hartman v. Moore,* 547 U.S. 250 (2006) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). As is relevant here, access to the court is a fundamental right protected by the United States Constitution. *Nordgren v. Miliken,* 762 F.2d 851, 853 (10th Cir. 1985). To state a § 1983 retaliation claim, a plaintiff must allege that (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to plaintiff's exercise of constitutionally protected conduct. *Allen v. Avance,* 491 F. App'x 1, 6 (10th Cir. 2012) (citing *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007)).

Defendants argue that Plaintiff fails to state a § 1983 retaliation claim because (1) Defendants were not involved in the decision to transfer Plaintiff from LCF to FCF; (2) Plaintiff's transfer from LCF to FCF would not chill a person of ordinary firmness because FCF

7

is a less secure facility; and, (3) Plaintiff's allegations are not sufficient to support the claim that "but for" Defendants' improper motivation, Plaintiff would not have been transferred.  The court addresses these arguments in turn below.

**1.**      ***Personal Participation of Defendants in Plaintiff's Transfer***

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 768 (10th Cir. 2013) (citing *Foote v. Speigel,* 118 F.3d 1416, 1423 (10th Cir. 1997)).  More specifically, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal,* 556 U.S. at 676.  Further, a plaintiff may establish a causal connection between a defendant's actions and an alleged constitutional deprivation by "showing the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of h[is] constitutional rights."  *Schneider,* 717 F.3d at 768.

**a.  *Defendant Brightwell***

Defendants argue that the only individual who possessed the authority to order Plaintiff's transfer was the CDOC Director and therefore, no other person can personally participate in the same.  (Mot. at 7.)  As Plaintiff points out, however, there are over 20,000 inmates within the State of Colorado and the idea that one individual is responsible for determining when an inmate should be transferred between prisons seems unlikely, at best.  Furthermore, Plaintiff has set forth specific factual allegations pertaining to Defendant Brightwell's participation in his transfer.

According to the Second Amended Complaint, the Offender Services department within the CDOC is responsible for prisoner transfers. (Am. Compl. at 5.) "Offender Services, as [Plaintiff] sets forth in his complaint, relies on facility-level decisions – in this case, a decision made in part by Defendant Brightwell – to determine where to house prisoners." (Resp. at 10; *see also* Am. Compl. at 5.) Plaintiff described that his case manager recommended reclassifying him and she "submitted that [he] should be retained at LCF." (Am. Compl. at 5.) Plaintiff agreed to the same and signed his reclassification paperwork, accordingly. (*Id.*) This paperwork was forwarded to Defendant Brightwell "who personally oversees all reclassification actions. At this point, [Plaintiff's] reclassification was changed to cause an immediate transfer to FCF . . . ." (*Id.*) The court finds Plaintiff has alleged sufficient facts to support the personal participation element of his claim as to Defendant Brightwell.

### b. Defendant Rich Fredericks

On the other hand, the court finds Plaintiff has not alleged sufficient facts to support his claim that Defendant Rich Fredericks participated in his transfer. He states that he "believes and will show that Defendant Brightwell and Rich-Fredericks worked together [] to have him transferred from LCF to FCF, as a result of him having a trial date set in Jenner v. Sokol, et al. Moreover, minimally Defendant Brightwell and Rich-Fredericks set in motion a series of events designed to have [Plaintiff's] property destroyed and for him to be persecuted for having filed in court and actually made it to trial." (*Id.*)

Plaintiff repeatedly argues in his Response that these allegations must be accepted as true at this stage of the proceedings. (Resp. at 9, 12.) However, this argument misstates the standard set forth in *Twombly* and *Iqbal,* directing courts to accept *factual* allegations as true but

specifically finding that conclusory, bare assertions are not entitled to the presumption of truth.

*Iqbal*, 556 U.S. at 680; *Twombly*, 550 U.S. at 555-56.  Plaintiff's assertions are merely bare

conclusions and assertions, rather than factual allegations.  As such, they are not entitled to a

presumption of truth and are insufficient to support a claim that Defendant Rich Fredericks

personally participated in Plaintiff's transfer.

**2.      *Injury Sufficient to Chill a Person of Ordinary Firmness from Continuing to Engage in that Activity***

The standard for determining the chilling effect on protected activity "is objective, rather

than subjective."  *Eaton v. Meneley,* 379 F.3d 949, 955 (10th Cir. 2004).  Thus, the relevant

inquiry is not whether the plaintiff was actually deterred from exercising his constitutional rights,

but whether a person of ordinary firmness in the plaintiff's position would have been so deterred.

*See id.*  A "trivial or *de minimis* injury will not support a" § 1983 retaliation claim.  *Id.*

As a general matter, a prisoner does not have a constitutional right to remain at a

particular facility.  *Frazier v. Dubois,* 922 F.2d 560, 561-62 (10th Cir. 1990) (citation omitted).

Nevertheless, as a general matter, prison officials cannot transfer an inmate to another facility in

retaliation for the exercise of his or her constitutional rights.  *Id.*  Ultimately, the court must look

to the circumstances surrounding the inmate's transfer to determine whether it constitutes an

injury that would chill a person of ordinary firmness from exercising their protected rights in the

future.  *Gandy v. Barber,* No. 12-cv-03331-MSK-MJW, 2014 WL 6853952 (D. Colo. Dec. 5,

2014).

In *Gandy,* Chief Judge Marcia S. Krieger held that a lateral transfer to another prison

facility that has no impact on a prisoner's rights or privileges constitutes a *de minimis* injury

unless the plaintiff can show that the transfer had other disruptive consequences.  *Id.* at *4.

There, a CDOC inmate brought a § 1983 retaliation claim after he was laterally transferred from the Arkansas Valley Correctional Facility ("AVCF") to another prison allegedly for filing a grievance against a staff member. *Id.* at *1.

Judge Krieger concluded that the circumstances surrounding the plaintiff's transfer failed to establish an injury that would dissuade a person of reasonable firmness from filing grievances in the future. *Id.* at *4.  Although the lateral transfer meant that the plaintiff retained substantially the same rights and privileges at the new facility, Judge Krieger acknowledged that "[e]ven if an inmate's privileges remain constant between facilities, a transfer can be disruptive in other ways—*e.g.* loss or delay in transfer of personal property, an interruption [to] the ability to participate in or complete rehabilitative programs and treatments." *Id.*  However, the only disruption suffered by the plaintiff in *Gandy* was that his transfer resulted in the termination of his participation in the AVCF apprentice program, and he had not shown that he was unable to resume a similar program at the new facility or that he otherwise suffered some skill limitation or educational setback. *Id.*  Judge Krieger therefore found that the plaintiff's injury as a result of his transfer was *de minimis* and would not have dissuaded a person of reasonable firmness from filing future grievances. *Id.*

Here, unlike in *Gandy* and as noted in this court's previous Recommendation, Plaintiff's transfer was actually a step-down transfer—while LCF is a Level IV security facility, FCF is only a Level III security facility.  Colo. Rev. Stat. § 17-1-104.3.  However, in his Second Amended Complaint, Plaintiff sets forth the following negative impacts as a result of his transfer: (1) Plaintiff was originally placed in the mental health and gang units at FCF, both of which are more dangerous than his unit at LCF (Am Comp. at 7; Resp. at 8); (2) Plaintiff

participated in the Incentive Living Unit Program for over three years while housed at LCF, but

has not been permitted to participate in the same at FCF (Am. Comp. at 7; Resp. at 8);  (3)

Plaintiff was eligible to and did work in the Correctional Industries Program at LCF, but was

informed that he is not eligible to participate in the same at FCF, resulting in a loss of

approximately $2400.00 per year (Am. Comp. at 7; Resp. at 8); (4) Plaintiff's placement at FCF

resulted in his being further away from his seriously ill wife and he was denied special visits

during the weekday with her (Am Compl. at 8; Resp. at 8); and, (5) Loss of significant amount of

personal property, due at least partially to the failure of the facilities to follow applicable

procedure, totaling in value in excess of $550.00, as well as invaluable items such as

photographs of deceased family members and all documents related to the Underlying Action.[3]

(Am. Compl. at 7-8; Resp. at 8.)

Although, as Defendants argue, FCF is a lower level security facility than LCF, Plaintiff

has alleged a significant loss of privileges overall as a result of his transfer, regardless of FCF's

security level classification.  *See Gandy*, *supra*.[4]  The court in Gandy noted that precisely what

injury an inmate suffers upon transfer is a factual question, the nature and degree of said injury

will vary from case to case and it is a plaintiff's burden to come forward with a showing of the

---

[3] Plaintiff further notes that many inmates are only able to earn approximately $0.60 per day, or approximately $12.00 per month, therefore lending to the argument that such results might chill a person of ordinary firmness from seeking to access the courts.  (Am. Compl. at 8.)

[4] In their Reply, Defendants rely upon *Morrison v. Lefevre*, 592 F. Supp. 1052 (S.D.N.Y. 1984) to argue that the causal relationship between the actions of Defendants in causing the transfer and the various alleged adverse impacts are too tenuous to state a cause of action.  (Reply at 5.) However, *Morrison* involved a due process claim based upon loss of property occurring during a transfer, *id.* at 1079-80, and holds little relevance, if any, to the current analysis.

injury. *Gandy*, 2014 WL 6853952, at *4. The court finds that Plaintiff has alleged sufficient

injury to dissuade a person of reasonable firmness from filing future lawsuits.[5]

### 3. Adverse Action Substantially Motivated by Plaintiff's Lawsuit

To satisfy the third element of his claim, Plaintiff must show that "the defendants' actions

were substantially motivated by the plaintiff's protected activity." *Magluta v. U.S. Fed. Bureau*

*of Prisons*, No. 08–cv–00404, 2009 WL 1504749, at *3 (D. Colo. May 27, 2009) (citing *Shero v.*

*City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)). Defendants contend that Plaintiff's

allegations in this regard are merely conclusory and therefore, this claim should be dismissed.

However, Plaintiff sets forth the following *factual* allegations to support this element: (1) On

February 3, 2013, Plaintiff's case manager recommended reclassification and that he remain at

LCF (Am. Compl. at 5-6); (2) Pursuant to regulation, Plaintiff was present for this decision and

signed his reclassification form (*Id.*); (3) Contrary to regulatory procedure, upon receiving

Plaintiff's reclassification form, Defendant Brightwell changed Plaintiff's classification

triggering Plaintiff's transfer to FCF (*Id.*); (4) Jewish inmates at FCF were alerted as early as

January that a new Jewish inmate (Plaintiff) was going to be transferred to their facility and that

he had been labeled as a 'troublemaker' (*Id.*); (5) A significant amount of Plaintiff's personal

property, including all documents related to the Underlying Action, were destroyed as a result of

the failure to follow applicable regulations related to disposal of personal property (Am. Compl.

at 6, 7-8); (6) Plaintiff's transfer was scheduled for February 24, 2013 and delayed because it

---

[5] Additionally, Defendants addressed the destruction of Plaintiff's property as if it were a separate claim. (*See* Mot. at 8-9.) However, Plaintiff made clear in his Second Amended Complaint that he was not raising a separate claim based on the same. Instead, the destruction of his property was one of various consequences resulting from his transfer. (Am. Compl. at 4, 7-8.)

was the same day as the Final Pretrial Conference in the Underlying Action; and, (7) The

defendants in the Underlying Action  indicated on that date their intent to file a Motion to

Dismiss Plaintiff's claims as moot based on Plaintiff's transfer and did file the same (Am. Comp.

at 6).

The court finds that Plaintiff has sufficiently alleged that his transfer was substantially

motivated by his lawsuit.  *See Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (finding that

the plaintiff had sufficiently alleged that his transfer was substantially motivated by the

plaintiff's protected activity based on the temporal proximity between the two); *Perez v.*

*Ellington,* 421 F.3d 1128, 1132 (10th Cir. 2005) ("failure to follow the normal procedures" could

lead to an inference that defendants acted with retaliatory animus towards plaintiffs in an attempt

to discourage their protected activity).

Accordingly, it is

**RECOMMENDED** that Defendants' "Motion to Dismiss Second Amended Complaint

[#34] Pursuant to Fed. R. Civ. P. 12(b)(6)" be **GRANTED in part and DENIED in part**.

Plaintiff's retaliation claim against Defendant Rich Fredricks should be dismissed and Defendant

Rich Fredericks should be dismissed from this lawsuit.  Plaintiff's retaliation claim against

Defendant Brightwell should proceed.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 25th day of February, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge